| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Tyson M. Takeuchi, SBN 177419<br>LAW OFFICE OF TYSON M. TAKEUCHI<br>1100 Wilshire Blvd., Suite 2606<br>Los Angeles, CA 90017<br>Telephone (213) 637-1566<br>Facsimile (888) 977-6310<br>tyson@tysonfirm.com | |
| ☐ *Attorney for:* Debtor | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>LaRhonda Deshun Hackett,<br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:13-bk-36868-WB<br>CHAPTER: 13 |
|---|---|
| | ### NOTICE OF OBJECTION TO CLAIM |
| | DATE: 03/12/2014<br>TIME: 1:30 pm<br>COURTROOM: 1375, 13th Floor<br>PLACE: Edward R. Roybal Federal Building & Courthouse<br><br>255 East Temple Street<br>Los Angeles, CA 90012 |

1. TO *(specify claimant and claimant's counsel, if any)*:  EGC Financial, LLC (c/o Kenosian & Miele, LLP)

2. NOTICE IS HEREBY GIVEN that the undersigned has filed an objection to your Proof of Claim (Claim #7-1____) filed in the above referenced case.  The Objection to Claim seeks to alter your rights by disallowing, reducing or modifying the claim based upon the grounds set forth in the objection, a copy of which is attached hereto and served herewith.

3. **Deadline for Opposition Papers:** You must file and serve a response to the Objection to Claim not later than 14 days prior to the hearing date set forth above.

   **IF YOU FAIL TO TIMELY RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**

Date:  01/24/2014

LAW OFFICE OF TYSON M. TAKEUCHI
Printed name of law firm

_Signature_

Date Notice Mailed:  01/24/2014

Tyson M. Takeuchi
Printed name of attorney for objector

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

Tyson M. Takeuchi, SBN 177419
LAW OFFICE OF TYSON M. TAKEUCHI
1100 Wilshire Blvd., Suite 2606
Los Angeles, CA 90017
Tel 213.637.1566
Fax 888.977.6310
tyson@tysonfirm.com

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>LaRhonda Deshun Hackett,<br><br>               Debtor(s). | )) Case No.: 2:13-bk-36868-WB<br>))<br>)) Chapter 13<br>))<br>)) DEBTOR'S OBJECTION TO CLAIM 4of<br>)) SANTANDER CONSUMER USA INC;<br>)) MEMORANDUM OF POINTS AND<br>)) AUTHORITIES; DECLARATION OF DEBTOR<br>)) IN SUPPORT THEREOF<br>))<br>)) Hearing Information<br>)) DATE: October 22, 2013<br>)) TIME: 12:00 p.m.<br>)) CTRM: 1545, 15th Floor<br>))     U.S. Bankruptcy Court<br>))     21041 Burbank Boulevard<br>))     Woodland Hills, CA 91367<br>))<br>)) |

Debtor LaRhonda Deshun Hackett ("DEBTOR") respectfully moves the Court for an order reducing the secured claim ("SUBJECT CLAIM") in favor of Santander Consumer USA Inc, ("SANTANDER"), filed as claim number 4 in the Court's claims register for the instant case on the basis that the SUBJECT CLAIM arises from a purchase money loan with respect to an automobile the DEBTOR has owned for more than 910 days.

I.

STATEMENT OF FACTS

The DEBTOR filed the instant case on November 6, 2013. The proposed chapter 13 plan was also filed on November 6, 2013. The chapter 13 plan has not yet been confirmed.

The DEBTOR owns and operates a 2008 Nissan Altima ("COLLATERAL"), which she has owned since approximately May 22, 2008. The COLLATERAL is encumbered by a lien arising from a purchase money agreement in favor of SANTANDER.

On December 2, 2013, SANTANDER filed its proof of claim describing an interest in the COLLATERAL. A true, correct and complete copy of the proof of claim is attached as Exhibit 1.

Attached to Exhibit 1 is a copy of the original loan agreement for the COLLATERAL. It is May 22, 2008. As of the date of filing of the instant case—November 6, 2013—the DEBTOR had owned the COLLATERAL for more than 910 days.

The DEBTOR's proposed plan provides for payment of the SUBJECT CLAIM in an amount equal to the market value of the COLLATERAL at the time of filing of the instant case.

Attached as Exhibit 2 is a true, correct and complete copy of the Kelley Blue Book valuation of the COLLATERAL as of November 6, 2013. Said valuation indicates the COLLATERAL, in good condition, had a fair market value of $7,652.00.

The SUBJECT CLAIM states that $11,500.00 pf the $17,515.64 total claim amount is secured.

## II.

### ARGUMENT

The DEBTOR seeks to reduce the secured portion of the SUBJECT CLAIM to an amount equal to the market value of the COLLATERAL at the time the instant case was filed. Pursuant to U.S.C. 11 § 506(a)(2), the "value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing."

There is sufficient justification for a valuation of the COLLATERAL that is less than the amount of SANTANDER's claim. The COLLATERAL is in good condition, with minor cosmetic blemishes and defects, mechanically sound and with approximately 100,000 miles. A vehicle of the COLLATERAL's make and model, features, condition and mileage has a fair market value of $7,652.00 if sold to a private party according to Kelley Blue Book. A copy of Kelley Blue Book's November 6, 2013, valuation of the COLLATERAL is attached as Exhibit 2.

Furthermore, the DEBTOR is limited in her application of § 506 with respect to vehicles; the COLLATERAL must have been purchased more than 910 days prior to the filing date of the instant case.

In the instant case, the COLLATERAL was purchased on May 22, 2008, more than 910 days prior to the filing date of the instant case. Pursuant to § 506(a)(2), the secured portion of the SUBJECT CLAIM may be reduced to the market value of the COLLATERAL at the time the case was filed: between $7,652.00. The remaining difference in the claim, pursuant to § 506(a)(2) should be treated as an unsecured, non-

priority claim to be paid pro rata according to the terms of the confirmed Chapter 13 Plan.

CONCLUSION

Based on the foregoing, the DEBTOR respectfully requests an order of this Court as follows:

1.   That the secured portion of the SUBJECT CLAIM is reduced to $7,652.00, with the remaining difference to be treated as a general, unsecured, non-priority claim by the confirmed Chapter 13 Plan; and

2.   For other such relief as the Court deems proper.


DATED: January 24, 2014          LAW OFFICE OF TYSON M. TAKEUCHI

                                 _____
                                 TYSON M. TAKEUCHI
                                 Attorney for Debtor

## DECLARATION OF LARHONDA DESHUN HACKETT

I, LaRhonda Deshun Hackett, declare and state as follows:

1.    I am the debtor in Chapter 13 case No. 2:13-bk-16035-MT, I have personal knowledge of the facts stated herein, and if called upon to testify, could and would testify competently thereto.

2.    I filed the instant case on November 6, 2013.

3.    My proposed chapter 13 plan was also filed on November 6, 2013. It is not yet confirmed.

4.    I own and operate a 2008 Nissan Altima ("COLLATERAL"), which I have owned since approximately May 22, 2008.

5.    The COLLATERAL is encumbered by a lien arising from a purchase money agreement in favor of Santander Consumer USA INc. ("SANTANDER").

6.    The COLLATERAL was listed in Schedule B of my bankruptcy petition. See Court File.

7.    On December 2, 2013, SANTANDER filed its proof of claim describing an interest in the COLLATERAL.

8.    A true, correct and complete copy of the proof of claim is attached as Exhibit 1.

9.    SANTANDER values its security interest in the COLLATERAL as $11,500.00 ("SUBJECT CLAIM"). See Exhibit 1.

10.    Attached to Exhibit 1 is a copy of the original loan agreement for the COLLATERAL. It is dated May 22, 2008.

11.    As of the date of filing of the instant case—November 6, 2013—I have owned the COLLATERAL for more than 910 days.

12.    My proposed plan allows for $6,652.00 to be paid to SANTANDER for the SUBJECT CLAIM, as this figure was an estimated market value of the COLLATERAL at the time the instant case was filed.

13. As of November 6, 2013, a Kelley Blue Book valuation of a vehicle of the same make, model and trim of the COLLATERAL, with identical mileage of 100,000 miles, reveals the COLLATERAL, in good condition, is worth $7,652.00 in a private party sale.

14. A true, correct and complete copy of the Kelley Blue Book valuation of the COLLATERAL, current as of November 6, 2013, is attached as Exhibit 2.

20. In light of the foregoing, I respectfully request the Court grant the relief requested in the instant motion.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the forgoing is true and correct to the best of my knowledge and belief.

Executed this 24th Day of January, 2014, at Los Angeles, California.

_____
LaRhonda Deshun Hackett, Debtor

# EXHIBIT 1

| UNITED STATES BANKRUPTCY COURT   CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br><br>LARHONDA HACKETT | Case Number:<br><br>13-36868 | |
|---|---|---|

NOTE: *Do not use this form make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>   Santander Consumer USA Inc.; as Assignee for HSBC | |
|---|---|
| Name and address where notices should be sent:<br>   Santander Consumer USA Inc.; as Assignee for HSBC<br>   P.O. Box 961245<br>   Fort Worth, TX 76161<br>   Telephone No. (888) 437-4846        email: | COURT USE ONLY<br><br>☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>   *(If known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br>   Santander Consumer USA Inc.; as Assignee for HSBC<br>   P.O. Box 560284<br>   Dallas, TX 75356<br>   Telephone No. (888) 437-4846        email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** $ **17,515.64**  plus  **13.79%**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money Loaned
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>   3456 | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of
setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☑ Motor Vehicle  ☐ Other
**Describe:**  2008 NIS ALTIMA
**Value of Property:** $ 11,500.00

**Annual Interest Rate:** 13.79% ☑ Fixed  or  ☐ Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$ 2,808.36

**Basis for perfection:**   Certificate of Title

**Amount of Secured Claim:**  $11,500.00

**Amount Unsecured:**  $6,015.64

**5. Amount of Claim Entitled to Priority Over 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestics support obligations Over 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

*\* Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction#6)

B 10 (Official Form 10) (04/10)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgements, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box:

☐ I am the creditor.    ☑ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare Over penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and resonable belief.

Print Name:     Jeffrey Hodges
Title:          Bankruptcy Clerk
Company:        Santander Consumer USA Inc.; as Assignee for HSBC        /s/ Jeffrey Hodges        12/02/2013
Address and telephone number (if different from notice address above):                    (Signature)        (Date)

_____
_____
_____

Telephone number:_____  email:_____

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U. S. C. $$ 152 and 3571.

Santander
CONSUMER

Case Number: 13-36868
Filer(s) Name:

LARHONDA HACKETT

Account No: 3456
Original Claim #:

## Payoff Itemization

**Filing Date:** 11/6/2013

| | |
|---|---|
| Total Principal: | $ 16,786.28 |
| Total Interest: | $ 317.10 |
| Total Extension Fees: | $ 0.00 |
| Total Late Fees: | $ 27.26 |
| Total NSF Fees: | $ 0.00 |
| Total Legal Fees: | $ 0.00 |
| Total Repo Fees: | $ 385.00 |

**Payoff**                    $17,515.64

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE

Buyer Name and Address
(Including County and Zip Code)
LARMONDA D HACKETT
206 N MAGNOLIA CT
COMPTON, CA 90220
LOS ANGELES

Co-Buyer Name and Address
(Including County and Zip Code)

Creditor-Seller (Name and Address)
SUPERIOR NISSAN OF CARSON
1505 E 223RD STREET
CARSON, CA 90745

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor – Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2008 | NISSAN ALTIMA | 9 | 1N4AL21E58N523911 | ☐ personal, family or household ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $2850.00 |
|---|---|---|---|---|
| 13.79 % | $ 12802.12 | $ 26463.00 | $ 39265.20 | $ 42115.20 |
| | | | (e) means an estimate | |

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| 71 Payments | 545.35 | Monthly, Beginning   07/08/2008 |
| One Payment of | N/A | Monthly, Beginning |
| One Final Payment | 545.35 | 06/08/2014 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

## ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

| | | |
|---|---|---|
| **1. Total Cash Price** | | $ 22940.00 (A) |
| A. Cash Price of Motor Vehicle and Accessories | $ 22940.00 | |
| i. Cash Price Vehicle | $ 22940.00 | |
| ii. Cash Price Accessories | $ N/A | |
| B. Other (Nontaxable) | $ N/A | |
| Describe _____ | $ 55.00 | |
| C. Document Processing Fee (not a governmental fee) | $ N/A | |
| D. Smog Fee Paid to Seller | $ N/A | |
| E. (Optional) Theft Deterrent Device (to whom paid) | $ N/A | |
| F. (Optional) Theft Deterrent Device (to whom paid) | $ N/A | |
| G. (Optional) Surface Protection Product   AUTOMATIC PAINT | $ 1299.00 | |
| H. (Optional) Surface Protection Product (to whom paid) | $ N/A | |
| I. Sales Tax (on taxable items in A through H) | $ 200A.26 | |
| J. Optional DMV Electronic Filing Fee | $ 28.00 | |
| K. (Optional) Service Contract (to whom paid)   PORTFOLIO | $ 1956.00 | |
| L. (Optional) Service Contract (to whom paid)   N/A | $ N/A | |
| M. (Optional) Service Contract (to whom paid) | $ N/A | |
| N. (Optional) Service Contract (to whom paid) | $ N/A | |
| O. (Optional) Gap Contract (to whom paid) | $ N/A | |
| P. Prior Credit or Lease Balance paid by Seller to _____ | $ 0.00 (A) | |
| (see downpayment and trade-in calculation) | | |
| Q. (Optional) Gap Contract (to whom paid)   EQUITY GAP 72 MOS. | $ 600.00 | |
| R. (Optional) Used Vehicle Contract Cancellation Option Agreement | $ N/A | |
| S. Other (to whom paid)   TIRES FOR LIFE | $ N/A | |
| **Total Cash Price (A through S)** | | $ 28882.26 (1) |
| **2. Amounts Paid to Public Officials** | Estimated | |
| A. License Fees | $ 222.00 | |
| B. Registration/Transfer/Titling Fees | $ N/A | |
| C. California Tire Fees | $ 8.75 | |
| D. Other | $ N/A | |
| **Total Official Fees (A through D)** | | $ 230.75 (2) |
| **3. Amount Paid to Insurance Companies** | | $ N/A (3) |
| (Total premiums from Statement of Insurance column a + b) | | |
| **4. Smog Certification or Exemption Fee Paid to State** | | $ N/A (4) |
| **5. Subtotal** (1 through 4) | | $ 29113.01 (5) |
| **6. Total Downpayment** | | |
| A. Agreed Trade-In Value   1999   DODGE | $ 400.00 | |
| Model   INTREPID   113859 | | |
| VIN   2B3HD46R9XH724250 | | |
| B. Less Prior Credit or Lease Balance | $ 400.00 (A) | |
| C. Net Trade-In (A less B) (indicate if a negative number) | $ 0.00 | |
| D. Deferred Downpayment | $ N/A | |
| E. Manufacturer's Rebate | $ N/A | |
| F. Other | $ 1250.00 | |
| G. Cash | $ 1000.00 | |
| **Total Downpayment (C through G)** | | $ 2650.00 |
| (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1P above) | | |
| **7. Amount Financed** (5 less 6) | | $ 26463.00 (7) |

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PROVIDE FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan Form
Amount $ _____   N/A
Total $ _____   N/A
installments of $ _____   N/A
from this Loan is shown on left.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable:
N/A

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____   N/A   _____ SELLER'S INITIALS

**THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.**
**WARNING!**
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

Buyer X _____   Co-Buyer X _____

**Representations of Buyer:** Seller has relied on the truth and accuracy of the information provided by you in connection with the Trade-In Vehicle. You represent that you have given a true payoff amount on the vehicle traded in. The payoff amount is more than the amount shown above in item 6B as "Prior Credit or Lease Balance," you must pay Seller the excess on demand. If the payoff amount is less than the amount shown above in item 6B as "Prior Credit or Lease Balance," Seller will refund the difference to you.

Buyer X _____   Co-Buyer X _____

**Notice to Buyer:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the terms of the financing or payment terms unless you agree to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer X _____   Co-Buyer X _____

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a 2-day contract cancellation option on used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option agreement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

Buyer Signature X _____   Co-Buyer Signature X _____   05/22/08
Co-Buyers and Other Owners — A "Buyer" is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____   Address _____

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owed on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to remain bound even if the contract is changed in any way or if we release any other person or any security we hold. If the Buyer fails to pay the total amount owing, or (2) abandons or surrenders relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default, and notices of the amount owing at any time, and of any demands upon the Buyer.
Guarantor Signature X _____   Address _____
Guarantor Signature X _____   Address _____

Seller Signs   SUPERIOR NISSAN OF CARSON   X _____   MANAGER

## STATEMENT OF INSURANCE
**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

### Vehicle Insurance

| | Term | Premium |
|---|---|---|
| Ded. Comp., Fire & Theft $ ____ Ded. | $ N/A |  |
| Collision Ded. $ ____ Ded. | $ N/A |  |
| Bodily Injury $ ____ / $ ____ Limits | $ N/A |  |
| Property Damage $ ____ Limits | $ N/A |  |
| Medical $ ____ Limits | $ N/A |  |
| Total Vehicle Insurance Premiums | $ N/A |  |

A charge is made for insurance. THIS INSURANCE IS REQUIRED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE. PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not agreeing to buy any other insurance to obtain credit.

Buyer X _____
Buyer X _____

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Application For Optional Credit Insurance
Credit Life ☐ Buyer ☐ Co-Buyer ☐ Both
Credit Disability (Buyer Only) ☐

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | | | $ N/A |
| Credit Disability | | | $ N/A |
| Total Credit Insurance Premiums | | | $ N/A |
| Insurance Company Name | N/A | | |
| Home Office Address | N/A | | |

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).
You want to buy the credit insurance.

Date _____
Buyer Signature X _____   Age _____
Date _____
Co-Buyer Signature X _____   Age _____

**OPTIONAL GAP CONTRACT** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1Q of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term _____ 72 _____   EQUITY GAP 72 M
Name of Gap Contract _____
☐ I want to buy a gap contract.
Buyer X _____

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1K, 1L, 1M, 1N, and/or 1O.
1K Company _____   Term _____ 60 _____   60000 _____ Miles
1L Company _____   Term _____   _____ Miles
1M Company _____   Term _____   _____ Miles
1N Company _____   Term _____   _____ Miles
1O Company _____   Term _____   _____ Miles
Buyer X _____

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.
Buyer Signs X _____
Co-Buyer Signs X _____

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

## 1. FINANCE CHARGE AND PAYMENTS

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Creditor - Seller may receive part of the Finance Charge.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment, or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

## 2. YOUR OTHER PROMISES TO US

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

> **GAP LIABILITY NOTICE**
> In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional gap contract (debt cancellation contract) for coverage of the gap amount may be offered for an additional charge.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
   You give us a security interest in:
   • The vehicle and all parts or goods installed on it;
   • All money or goods received (proceeds) for the vehicle;
   • All insurance, maintenance, service, or other contracts we finance for you; and
   • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also raise the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
   Default means:
   • You do not pay any payment on time;
   • You give false, incomplete, or misleading information on a credit application;
   • You start a proceeding in bankruptcy or one is started against you or your property;
   • The vehicle is lost, damaged or destroyed; or
   • You break any agreements in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

f. **We may sell the vehicle if you do not redeem it.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

**If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

## 5. Used Car Buyers Guide.

The information you see on the window form for this vehicle is part of this contract. **Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation:** Guía para compradores de vehículos usados. La información que se ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. Applicable Law

Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

## 7. Warranties of Buyer. You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

## CREDIT DISABILITY INSURANCE NOTICE CLAIM PROCEDURE

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months or accepts the claim but later pays or rejects the claim, after the claim but later pays or rejects the claim, after the ... within 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given. If the insurance company accepts your claim but requires that you send in additional forms to establish eligibility for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

> **Seller's Right to Cancel**
>
> a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.
> b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.
> c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.
> d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

---

## ARBITRATION CLAUSE
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by the terms of decision at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other costs, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless the such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

| Seller assigns its interest in this contract to | (Assignee) at (address) |
| --- | --- |
| HSBC AUTO FINANCE | under the terms of Seller's agreement(s) with Assignee. |

☐ Assigned with recourse    ☑ Assigned without recourse    ☐ Assigned with limited recourse

Seller **Superior Nissan of Carson**    By _[signature]_    **BUSINESS MANAGER**

Form No. 553-CA-ARB 5/08

**NOTICE OF TRANSFER AND
RELEASE OF LIABILITY**

*MAIL THIS FORM TO DMV*

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME          FIRST

B. NEW OWNER'S ADDRESS          APT NUMBER          C. ODOMETER READING (NO TENTHS)

D. CITY          STATE          ZIP CODE          E. DATE OF SALE OR LEASE RETURN
          MO     DAY     YR

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME          FIRST          G. SELLING PRICE (NO CENTS)
          WHOLE
          DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS          APT NUMBER          I. SELLER'S OR LESSEE'S SIGNATURE
          X

J. CITY          STATE          ZIP CODE

VEHICLE ID NUMBER          YR. MODEL     MAKE          PLATE NUMBER

1N4AL21E58N523911          2008 NISS          5VIW722

REG 138A (REV. 8/2007)

---



**STATE OF CALIFORNIA**

**CERTIFICATE OF TITLE**          VEHICLE HISTORY

V410806031F

**AUTOMOBILE**

| VEHICLE ID NUMBER | YR. MODEL | MAKE | PLATE NUMBER |
| 1N4AL21E58N523911 | 2008 | NISS | 5VIW722 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
| 4D | | | G | | *222 | 05/24/2009 |

| YR 1ST SOLD | CLASS | TYP | MO | EQUIPM'T TRUST NUMBER | ISSUE DATE |
| 2008 | FP | | PT | 39040 | 06/12/08 |

MOTORCYCLE ENGINE NUMBER          ODOMETER DATE          ODOMETER READING
          05/22/2008          9 MI
          ACTUAL MILEAGE

REGISTERED OWNER(S)
HACKETT LARHONDA D
206 N MAGNOLIA CT
COMPTON CA 90220

-----
-----

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ X _____
    DATE          SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
    DATE          SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ ___ ___ ___ ___ ] (no tenths) miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

**WARNING**   ☐ Odometer reading is not the actual mileage.  ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEREE/BUYER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

**IMPORTANT READ CAREFULLY**
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

HSBC
PO BOX 17902
SAN DIEGO CA 92177

2. X _____
   Signature releases interest in vehicle. (Company names must be countersigned)
   Release Date

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS that the undersigned, HSBC Auto Finance Inc, HSBC Auto Credit Inc., HSBC Auto Accounts Inc., Beneficial Connecticut Inc., Beneficial Consumer Discount Company, Beneficial Financial I Inc., Beneficial Florida Inc., Beneficial Kentucky Inc., Beneficial Loan & Thrift Co., Beneficial Louisiana Inc., Beneficial Maine Inc., Beneficial Massachusetts Inc., Beneficial Michigan Inc., Beneficial New Hampshire Inc., Beneficial New York Inc., Beneficial Oregon Inc., Beneficial Rhode Island Inc., Beneficial South Dakota Inc., Beneficial Tennessee Inc., Beneficial West Virginia Inc., Beneficial Wyoming Inc., Household Finance Consumer Discount Company, Household Finance Corporation II, Household Finance Corporation III, Household Finance Corporation of Alabama, Household Finance Corporation of California, Household Finance Corporation of Nevada, Household Financial Center Inc., Household Industrial Finance Company, Household Realty Corporation and HSBC Credit Center, Inc. (collectively, "HSBC" or the "Grantor"), does make, constitute and appoint Santander Consumer USA Inc., an Illinois corporation and its affiliates, successors and assigns ("SCU") without any right of revocation and with full power of substitution, as the true and lawful Agent and Attorney-in-Fact on behalf of the Grantor in its place and stead with respect to matters described in paragraphs 1 and 2 below, to do, exercise and/or perform each, any and every act, exercise and power that the Grantor might or could do, exercise and/or perform through any other person, that SCU shall deem advisable, proper and/or necessary, in connection with, and consistent with the terms of that certain Asset Purchase Agreement dated as of November 9, 2009 by and between SCU and HSBC, and that certain Servicing Agreement dated as of November 9, 2009 among HSBC and SCU, as such agreements now exists and may hereafter be amended or supplemented (the "Agreements"), intending hereby to vest SCU full power and authority with respect to only the following:

1. To prepare, execute, acknowledge, verify, swear to, deliver, endorse, negotiate, record and file, in the Grantor's or its successor's name, place and stead, all agreements, instruments, documents, assignments and certificates that SCU in its sole discretion deems advisable, desirable, proper and/or necessary for SCU to grant, receive, maintain or perfect a security interest in each Vehicle pursuant to the Agreements, including any Dealer Agreement, Dealer Assignment, Alliance Agreement or Alliance Assignment as it relates to the Purchased Loans by SCU from Grantor ("Dealer Document") and the proceeds thereof in favor of SCU, to exercise the rights of the Grantor with respect to each Vehicle related to a Dealer Document and the proceeds thereof, including without limitation, the right to repossess and dispose of any repossessed Vehicle, to grant, sell, assign and transfer each Dealer Document to SCU, and to generally do and perform all and any other act whatsoever as may be advisable, desirable, proper and/or necessary with respect to the foregoing. Defined terms used herein but not defined herein shall have the meanings set forth in the Agreements. The foregoing shall include without limitation the power and authority to make, execute, acknowledge, verify, swear to, deliver, endorse, negotiate, record and file Certificates of Title and financing statements with respect to Vehicles and all amendments and supplements thereto and to sign any assignments of the Dealer Documents to SCU, that SCU in its sole discretion deems advisable, desirable, proper and/or necessary, all in connection with, and consistent with the terms of the Agreements.

2. To prepare, execute, deliver, endorse and negotiate in the name of the Grantor payment checks applicable to Dealer Documents.

The Grantor does hereby ratify and confirm any and all things whatsoever SCU may do or may have already done by virtue hereof with respect to the powers and authorities granted hereby. This Power of Attorney shall be deemed to have been executed under seal, to be coupled with an interest shall be irrevocable, shall survive the incapacity of the undersigned and shall extend to any successor of the Grantor.

This Power of Attorney shall commence on the date hereof and shall continue in full force and effect until each of the Dealer Documents assigned to SCU under the Agreements is fully paid (or is repurchased by the Grantor or the applicable Dealer or Alliance Relationship and SCU is repaid for such Dealer Document in accordance with the terms of the Agreements), at which time this Power of Attorney shall terminate.

IN WITNESS WHEREOF each Assignor has executed this Power of Attorney this 15th day of March 2010.

HSBC Auto Finance Inc.
HSBC Auto Credit Inc.
HSBC Auto Accounts Inc.

By: _____
Name:   Joan M. Coppenrath
Title:   Executive Vice President, Chief Financial Officer
         Treasurer & Secretary


STATE OF CALIFORNIA              )
                                 ) SS
COUNTY OF                        )

On this _____ day of March 2010, before me, a Notary Public in the State of California, personally appeared Joan M. Coppenrath, to me personally known to be the an officer of the Grantor identified above her signature, and such officer acknowledged the execution of said instrument to be the voluntary act and deed of the Grantor.

_____              [SEAL]
Notary Public

| | |
|---|---|
| Beneficial Connecticut Inc. | Beneficial Consumer Discount Company |
| Beneficial Financial I Inc. | Beneficial Florida Inc. |
| Beneficial Kentucky Inc. | Beneficial Loan & Thrift Co. |
| Beneficial Louisiana Inc. | Beneficial Maine Inc. |
| Beneficial Massachusetts Inc. | Beneficial Michigan Inc. |
| Beneficial New Hampshire Inc. | Beneficial New York Inc. |
| Beneficial Oregon Inc. | Beneficial Rhode Island Inc. |
| Beneficial South Dakota Inc. | Beneficial Tennessee Inc. |
| Beneficial West Virginia Inc. | Beneficial Wyoming Inc. |
| Household Finance Consumer Discount Company | Household Finance Corporation II |
| Household Finance Corporation III | Household Finance Corporation of Alabama |
| Household Finance Corporation of California | Household Finance Corporation of Nevada |
| Household Financial Center Inc. | Household Industrial Finance Company |
| Household Realty Corporation | |

By: _____
Name:   Tammy Knipfer
Title:   Vice President – Treasurer & Controller


HSBC Credit Center, Inc.

By: _____
Name:   Tammy Knipfer
Title:   President


STATE OF ILLINOIS      )
                       ) SS
COUNTY OF LAKE         )

On this _____ day of March 2010, before me, a Notary Public in the State of Illinois, personally appeared Tammy Knipfer, to me personally known to be an officer of the Grantor identified above her signature, and such officer acknowledged the execution of said instrument to be the voluntary act and deed of the Grantor on behalf of the entities named above her signature.

_____              [SEAL]
Notary Public

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _San Diego_ }

On _March 10, 2010_ before me, _Ayesha Baraan_
<br>Date — Here Insert Name and Title of the Officer

personally appeared _John M Copporata_
<br>Name(s) of Signer(s)

_____

AYESHA BARAAN
Commission # 1704434
Notary Public - California
San Diego County
My Comm. Expires Nov 13, 2010

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
<br>Signature of Notary Public

Place Notary Seal Above

─────────────── **OPTIONAL** ───────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____  Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____  Signer Is Representing: _____
_____  _____

EXHIBIT 2





Advertisement                                                    Why ads?

# 2008 Nissan Altima Pricing Report

Sell To Private Party



**Style:** 2.5 Sedan 4D
**Mileage:** 100,000



Fair Condition **$6,777**
Good Condition **$7,652**
Very Good Condition **$7,952**
Excellent Condition **$8,352**

PRIVATE PARTY RANGE

**Private Party Values valid for your area through 11/7/2013**

## Vehicle Highlights

**Fuel Economy:**
City 23/Hwy 32/Comb 26 MPG

**Max Seating:** 5

**Doors:** 4

**Engine:** 4-Cyl, 2.5 Liter

**Drivetrain:** FWD

**Transmission:** Manual, 6-Spd w/Overdrive

**EPA Class:** Midsize Cars

**Body Style:** Sedan

**Country of Origin:** Japan

**Country of Assembly:** United States

## Your Configured Options

Our pre-selected options, based on typical equipment for this car.

✓ Options that you added while configuring this car.

**Engine**
   4-Cyl, 2.5 Liter
**Transmission**
   Manual, 6-Spd w/Overdrive
**Drivetrain**
   FWD

**Braking and Traction**
   ABS (4-Wheel)
**Comfort and Convenience**
   Air Conditioning
   Power Windows
   Power Door Locks
**Steering**
   Power Steering
   Tilt Wheel

**Safety and Security**
   Dual Air Bags
   Side Air Bags

## Glossary of Terms

**Kelley Blue Book® Trade-in Value** - This is the amount you can expect to receive when you trade in your car to a dealer. This value is determined based on the style, condition, mileage and options indicated.

**Trade-In Range** - The Trade-In Range is Kelley Blue Book's estimate of what you can reasonably expect to receive this week based on the style, condition, mileage and options of your vehicle when you trade it in to a dealer. However, every dealer is different and values are not guaranteed.

**Kelley Blue Book® Private Party Value** - This is the starting point for negotiation of a used-car sale between a private buyer and seller. This is an "as is" value that does not include any warranties. The final price depends on the car's actual condition and local market factors.

**Tip:**

It's crucial to know your car's true condition when you sell it, so that you can price it appropriately. Consider having your mechanic give you an objective report.

**Private Party Range** - The Private Party Range is Kelley Blue Book's estimate of what you can reasonably expect to receive this week for a vehicle with stated mileage in the selected condition and configured with your selected options, excluding taxes, title and fees when selling to a private party.

**Excellent Condition** - 3% of all cars we value. This car looks new and is in excellent mechanical condition. It has never had paint or bodywork and has an interior and body free of wear and visible defects. The car is rust-free and does not need reconditioning. Its clean engine compartment is free of fluid leaks. It also has a clean title history, has complete and verifiable service records and will pass safety and smog inspection.

**Very Good Condition** - 23% of all cars we value. This car has minor wear or visible defects on the body and interior but is in excellent mechanical condition, requiring only minimal reconditioning. It has little to no paint and bodywork and is free of rust. Its clean engine compartment is free of fluid leaks. The tires match and have 75% or more of tread. It also has a clean title history, with most service records available, and will pass safety and smog inspection.

**Good Condition** - 54% of all cars we value. This car is free of major mechanical problems but may need some reconditioning. Its paint and bodywork may require minor touch-ups, with repairable cosmetic defects, and its engine compartment may have minor leaks. There are minor body scratches or dings and minor interior blemishes, but no rust. The tires match and have 50% or more of tread. It also has a clean title history, with some service records available, and will pass safety and smog inspection.

**Fair Condition** - 18% of all cars we value. This car has some mechanical or cosmetic defects and needs servicing, but is still in safe running condition and has a clean title history. The paint, body and/or interior may need professional servicing. The tires may need replacing and there may be some repairable rust damage.

© 1995-2013 Kelley Blue Book Co.®, Inc. All rights reserved.

*© 2013 Kelley Blue Book Co., Inc. All rights reserved. 11/1/2013-11/7/2013 Edition for California 90017. The specific information required to determine the value for this particular vehicle was supplied by the person generating this report. Vehicle valuations are opinions and may vary from vehicle to vehicle. Actual valuations will vary based upon market conditions, specifications, vehicle condition or other particular circumstances pertinent to this particular vehicle or the transaction or the parties to the transaction. This report is intended for the individual use of the person generating this report only and shall not be sold or transmitted to another party. Kelley Blue Book assumes no responsibility for errors or omissions. (v.13110)*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

　　1100 Wilshire Boulevard, Suite 2606, Los Angeles, California 90017

A true and correct copy of the foregoing document entitled (*specify*): Notice of Objection to Claim and Debtor's
Objection to Claim 4 of Santander Consumer USA Inc.
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
01/24/2014_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

　　Nancy K Curry (TR)　　ecfnc@trustee13.com
　　Tyson Takeuchi　　tyson@tysonfirm.com, tyson@ecf.inforuptcy.com
　　United States Trustee (LA)　　ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __01/24/2014___, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

Santander Consumer USA, Inc., PO Box 961245, Fort Worth, TX 76161
Santander Consumer USA, Inc., c/o C T Corporation Sytem, 818 West 7th St, Los Angeles, CA 90017
Santander Consumer USA, Inc., Attn: Officer, 5201 Rufe Snow Dr., North Richland Hills, TX 76180

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __01/24/2014_____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

　JUDGE: US Bankruptcy Court, 255 East Temple Street, Suite 1382, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

01/24/2014　　Albert Pfaffman_____
　*Date*　　　　　*Printed Name*　　　　　　　　　　　　*Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.